On behalf of the athlete, Ms. Sharon Shannon. Mr. Miller? Good morning, Your Honors. Good morning, Counsel. May it please the Court, Derek Miller from the State Appellate Defender's Office on behalf of the appellant, Jackie Hughes. Your Honors, this case involves a situation where Mr. Hughes came into court after serving a seven-year commitment on a sexually dangerous person's commitment and pled guilty with the expectation that he would be released for time served. And ultimately, within two weeks, the state had filed the sexually violent person's petition, which was predicated on his guilty plea. And ultimately, I believe that petition is still pending, and he still remains committed on that petition. Mr. Hughes' guilty plea should be vacated for two reasons. First, he pled guilty to a charge that was not existent, as it had been malpraised and never reinstated. And secondly, his plea was not voluntary because he pled guilty with the expectation of being released and was never advised of the possibility of an SVP, a sexually violent person's petition, being filed. With regard to the plea to the nonexistent charge, did the defendant voluntarily participate in the proceedings? Did he voluntarily agree to plead guilty to the Malacross charge? He voluntarily pled guilty, yes. So what's the legal impediment to doing that? Well, there was no charge for which him to plead guilty. There was nothing there. The court lacked jurisdiction. All right, the state raises the revestment doctrine. Why would the revestment doctrine not apply to this case? Well, first of all, the case is cited by the state. The state cites, I believe, nine revestment cases, and not one of those cases involved a charge that's no longer existing. Each one of those cases involved, for example, People v. Menitti, a motion to reconsider filed after 30 days. So the criminal charge is still there, and that's just the typical revestment situation where a motion to reconsider is filed beyond the 30-day period, and the parties come in and argue it, and the state really has no objection. There was no question it was probable cause because the defendant had been indicted, correct? Yes. And the state could have, if the defendant objected, the state could have just simply filed an information, gone back and re-indicted. Doesn't the plea agreement waive all of those procedural defects? No, I don't believe the parties can waive jurisdictional issues. I believe that is the law, and that's a problem. I mean, you're absolutely right. The state could have done this. It's not even clear, you know, if the defendant didn't object, but it's not really clear that the defendant was even aware of what charges had been now passed and which ones, or what the exact status was. So there was a factual basis offered for the plea? Certainly. So he knew what allegation he was pleading guilty to? Yes. I mean, this is not a case, obviously, where the defendant pleads guilty to a charge that he was never indicted for or never charged with. That's not the situation here. He had been charged with the offense. It got dismissed. Well, it kind of is. He pled guilty to a nonexistent charge, so obviously he had never been indicted or anything. I mean, the charges simply didn't exist. Once the state dismisses a charge, the law is clear that the only way to get that back in the court and the only way for the trial court to have jurisdiction is to go about and formally refile the charge. In fact, even if they would have agreed, oh, yes, we'd like to reinstate count six, that still wouldn't have been good enough. The state would have had to physically have gone in with a new charging instrument, refiled. And you have authority that says that. The state has to do all of that. Yeah, Woosley, People v. Woosley, Supreme Court case from 1990, when the case is now processed, no charges remain. The state must file a new charging instrument. Well, that's assuming that the defendant doesn't voluntarily participate. So what you seem to be saying is the defendant can go into court, agree to this, plead guilty, and at any time years down the road say, well, sorry, the plea is void. I guess that's what I am saying, because if you plead guilty to a nonexistent offense, it's void. And what it really boils down to is the state should have done its job before the defendant pled guilty. The simple matter of the fact is the court has no jurisdiction over a nonexistent offense. On what basis do you claim that the court has no jurisdiction other than the lack of an existence of a charge? In other words, did the trial court have subject matter jurisdiction to entertain the indictment when it was alive? Sure, when it was alive. And after it was dismissed or now crossed, would the trial court have had jurisdiction to vacate that within 30 days? After it was dismissed? After final judgment was rendered in that case, i.e. a sentence? Sure. And any motions to reconsider or whatever? Within 30 days, correct. Well, if revestment occurs, then does the court have subject matter jurisdiction of the proceedings? Well, that's kind of a, with all due respect, kind of a trick question. Because if revestment does occur, then jurisdiction is revested. So of course... Yeah, but your argument previously was for, I don't think it had anything to do with subject matter jurisdiction, except to the extent that you're claiming the non-reality of pleading guilty to a charge that doesn't exist. Which isn't the same thing as saying that the court didn't have the ability to sit on a bench and do something. When two parties voluntarily come before it. Well, I believe this court, Falco, I believe is the name of the case, it's a 2000 case. And that case held that child court does not have jurisdiction or dismiss charges. So it is a jurisdictional issue. I mean, if you need, you need to have a charge before the court. What happens if the defendant invites the error through a plea agreement? Is he not estopped? Or doesn't equitable principles arise? No. Why don't they? Because jurisdiction is not something that the parties can waive. For example, in this court, if a defendant files a, say, late notice appeal by one day, he's stuck. And if the court comes in here and waives it, I'm sorry, if the state comes in here and waives it, that's of no effect. Well, there's other ways around that point. Perhaps. But the states appearing on it and inviting the error, so to speak, is not one of them. It seems to me like your argument is something like if a tree falls in the forest and no one is there, does it make a noise? I'm not sure how to respond to that, but the argument is really pretty simple. And, in fact, I believe counsel even conceded in her brief that that is the law, that a court needs a charge before it in order to get jurisdiction. And counsel argues that jurisdiction revests. But as a starting point, jurisdiction is gone once, if there's no charge, a court has no jurisdiction to entertain a plea. For good reason. The court gets jurisdiction from the charge? You're saying the court gets jurisdiction then from the charge of document? Well, yeah, I guess. I mean, I don't know if it necessarily comes from the charge, but if there's no charge, there's no jurisdiction. See, the problem I have with your argument is I'll buy the argument if the defendant doesn't actively participate and agree to what is going down, so to speak. But, Your Honor, in any case, if he pleads guilty, that would always be the case. And I don't believe that, it's not even clear, it doesn't look like he even realized he was pleading guilty to a nonexistent charge. So how could he object unless he realized what he was getting himself into? He wanted to, he gained the benefit of the state dropping their sexually dangerous persons petition, correct? And that was the, that was the quid pro quo for the plea. That was the contract that he entered into that day. Well, I mean, I'm not sure that's really clear. My understanding is that he was no longer, at that point, no longer deemed a sexually dangerous person. I don't know how the state could have continued to have held him on a sexually dangerous persons petition if he's no longer a sexually dangerous person. So I'm not really sure that that was a benefit that he got. That record shows occurred. Well, it shows that that happened during the plea, but I'm not certain that it shows that that was really a benefit. His expectation is that he was going to just get out, time served. Sure, yeah. And unbeknownst to the parties, the Attorney General filed the petition. Correct. Why don't you talk about that? Okay. Well, our position essentially is that when he pled guilty, he pled guilty with the expectation for time served. And I think the record is very clear about that. And so when the state, in particular, when the state files a sexually violent persons petition, in this case, and the defendant is not even admonished about that possibility, and it turns out that he pleads guilty, believing that he's going to be immediately released, and now he's perhaps involuntarily committed for the remainder of his life, that's a pretty significant consequence. Does that constitute a breach of the bargain the state struck with the defendant? Does it constitute a breach? Right. The Attorney General also representing the state. No. Well, I'm not sure about that. It's not really clear about how this came about. I'm assuming what happened was that he was deemed no longer a sexually dangerous person. Once he pled guilty to this, to count six, he went back to the DOC with the expectation that he would be processed and get good time served, which I believe, if you recall, that was part of the agreement, too, that he didn't commit any conduct that would impact his good conduct credit. Counsel, let me ask you this. Would you agree that generally under the law, the failure of the trial court to admonish the defendant as to the collateral consequences of the plea, as opposed to the direct consequences, really have no bearing on the validity of the plea? There is that traditional distinction. No, I would not. I think Padilla changes that. But I'm saying, generally, before Padilla, that's the state of the law. Yes, I would absolutely agree that you would just categorize things as a direct consequence or a collateral consequence. And I think there are two cases that I cited from Illinois which held that a sexually violent person's petition is a collateral consequence. Right. I would agree. The state of the law in Illinois before Padilla clearly was that it was an indirect consequence, and the court was not required to admonish on that. Correct? Correct. So along comes Padilla, and the Supreme Court applies that in the context of deportation cases. Implicit in the court's holding, I think, is a recognition that due to recent changes in the immigration laws, that may removal nearly an automatic result in cases involving noncitizens. Okay? Is that the same here? Is a sexually violent person's petition an automatic result? Well, yes and no. I think it is automatic, in which the defendant was also not told of. It is that when he got remanded, he would be evaluated for a sexually violent person's determination. And so, yes, that part is automatic. So he was automatically put at risk of a sexually violent person's petition being filed, and he was not admonished of that possibility or of the possibility that after that evaluation, that the attorney general could hop in and file a sexually violent person's petition and ultimately he could perhaps be involuntarily committed for the remainder of his life. Do you have any case law authority that post Padilla has extended the argument of the sexually violent person's petition to cases involving the guilty plea? Do you have any cases on that? No, but I do have that New Jersey case, Bellamy, which is pre-Padilla, which essentially follows the rationale of Padilla. But that's really of no guidance here because, like the Bellamy case, our case law predated Padilla. So why would we follow New Jersey's? Well, I agree with that, but really because the rationale of Bellamy is almost identical to the rationale of Padilla, and that's that you just do not simply compartmentalize a consequence as being direct or collateral. So what's the rule that's supposed to come out of this case? We're supposed to abandon the tradition of distinction, then, between direct and collateral consequences on sort of a case-by-case basis. Yeah. Because that's the ultimate result of your argument. That's a fair statement, I guess. When the consequences are extremely severe, such as deportation or an involuntary commitment for perhaps the remainder of your life, then yes, then you just don't simply say, oh, well, the fact that he was involuntarily committed, that's a collateral consequence, so who cares? Well, obviously, when you look at this case, that was everything. This isn't even a traditional case, a typical case, where the defendant would plead guilty, serve his 14-year sentence, and then an SVP petition is filed. He pled guilty with the expectation of being released and wasn't even told. All right, so what you're asking us to do now, do you read the Supreme Court in Padilla as indicating they wanted to abandon the traditional distinction between direct and collateral consequences in determining the validity of the plea? No, I don't think it goes quite that far. I think in certain circumstances, as you said earlier, on a case-by-case basis, when the consequences are dire, then yeah, then I think Padilla essentially directs courts to reconsider the whole categorization of collateral consequences, not simply dispose of a case simply because the consequence is collateral, even though it's life-changing and important. Is the defendant in jail or incarcerated, institutionalized because of the plea that he pled guilty to or because he's currently sexually engaged? I believe the status now is he's served his time criminally, and I believe he's being detained on the sexually violent persons petition, which is obviously, they can't file that without the guilty plea. But he's civilly committed, and I believe that he hasn't been adjudicated sexually violent persons. I believe it's kind of been put on hold, waiting for the outcome of this appeal. This is kind of a downstream effect of a lack of jurisdiction. You're claiming that the plea was defective and of no consequence because there was no charge in existence and because there was no proper plea, there was no proper basis to further institutionalize him or file a petition as a sexually dangerous person. Now that the sentence has been fulfilled as to the criminal charge, he's still in jail on a sexually dangerous person or violent person. Is that correct? Well, kind of. I mean, the state cannot file a sexually violent persons petition without a criminal conviction. So getting him to plead guilty was a prerequisite. Isn't your argument essentially a house of cards, which is if the foundation is sand, i.e., the plea is bad, there's no jurisdiction, and therefore anything that's built upon it, such as the sexual violence, isn't that what your argument really is? Well, that's the first argument. I mean, in order to gain effective relief, the relief you're really seeking isn't the vacation of the conviction, is it? Or is it getting out of jail from being institutionalized? Well, it's the vacating of the plea is the relief we're seeking. And if the plea is vacated, yeah, of course, then that would undo the sexually violent person's commitment. But you're arguing the alternative as well. You're saying, look, if you're not buying the argument on the void plea, we still think the court should have admonished the defendant as to the potential consequences. Right, and that renders his plea involuntary, and so the plea should be vacated on that basis too. So both arguments relate to vacating the plea. So the bottom line is you're inviting us to extend the holding in Padilla. Correct, to this, either to sexually violent person petitions in general, or if you care to be more specific, for this case, one pleads guilty to a sex crime in the expectation of being immediately released, and he's not even admonished that this is a possibility. And then why won't we draw the line? Couldn't somebody come in and argue federal consequences, all admonishments? What is the bright-line rule we are to discern from this argument? Well, I mean, honestly, I mean, I'm advocating for my client. I really haven't thought about a bright-line rule. But, again, it depends on, as Padilla said, the close connection to the criminal conviction when intimately related to the criminal process and how dire the consequences are. Well, isn't a loss of license a dire consequence to most people? The loss of a driver's license? It could be. It's not, obviously, it's, you know, there would be a spectrum. Obviously, it's not as dire as deportation or a civil commitment for the rest of your life, losing your driver's license, so it's somewhere down. You keep using this term the rest of your life. He has remedies. He has to be tried. He will have an opportunity for discharge. All of the procedural rights that attach to sexually violent persons, he's going to be entitled to. So you keep using this term for the rest of your life. There's no determination yet. Correct. Potentially for the rest of his life. I mean, he could be released tomorrow. I mean, you know, they could find that he's good to go tomorrow. Okay. Your time is up, sir. You'll have a chance, Padilla. Ms. Shanahan? May it please the Court? Counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. The defendant seems to say that, well, yes, there's this revestment doctrine out there, but it should only apply to just a little bit down the road. They didn't file a motion to reconsider a sentence on time, which is what happened in Minetti and pretty much what happened in Cady. But that's not the law of revestment. Revestment doesn't say, well, if you do it just a little while. Two cases that I'd like to bring to this Court's attention are People v. Bannister, the Supreme Court case where two co-defendants tried. Mr. Bannister is convicted. Mr. Johnson is convicted. Two murders. Natural life prison. Seven years go by, and during this time Mr. Bannister's case is working its way through the system. He ends up getting a trial. Well, the state wants to use his co-defendant, Mr. Johnson, as a witness against him. Mr. Johnson's not going to do this out of the goodness of his heart. So the state comes along with Mr. Johnson's agreement. They both work together. Seven years after this happened, they get rid of one of those murder charges. It's just gone. And they get rid of the natural life imprisonment. They're going to give him 60 years. And Mr. Bannister, on appeal, says, you can't do that. He's already had a final judgment. You can't change his sentence, change his conviction, in fact. All these years later, and the Supreme Court said, yes, you can. It said, under the revestment doctrine, litigants may revest a trial court with personal and subject matter jurisdiction if they actively participate in proceedings that are inconsistent with the merits of the prior proceedings. How do you distinguish revestment from the questions my colleagues have been asking about just a waiver in general where a defendant voluntarily shows up and voluntarily participates and pleads guilty and is fully admitted? I think it's a similar concept, but I think revestment requires, sometimes waiver applies when a defendant does nothing. Revestment requires active participation on both parts. And in this case, if you look at the facts of this case, the defendant, defense counsel, and trial counsel, they all agreed to dismiss the SDP petition. The state, and this is a quote from page 1716 in the record, the state says, the defendant would be pleading guilty to count six of the indictment, which is one charge of aggravated criminal sexual abuse. Why didn't the state just go back and reindict the case to avoid this issue? This is a big record because of the time frame that happened. Quite honestly, I think they looked at the initial indictment, which had ten counts to it, and didn't realize that way down the road there, nobody realized that this had been not crossed. All you have to do is look at the orders. You don't have to go through the whole record. You have to go through the common law file that's in the courtroom available to all parties. I agree. The state could have just said, you know what? Sorry, judge, give us a week. We'll do this next week. Yes, they could have. They didn't. Why didn't they move to vacate the non-repress? We need the state to charge. I have no way of knowing why they didn't. I know they didn't. But I do know that all of the parties walked in and said, the state said he's pleading guilty to count six. The court says, and this is again another quote, the agreement is that you would be pleading guilty to count six in 99 CF 2426, which is the charge of aggravated criminal sexual abuse. Defense counsel says that's correct. Then they give the factual basis for this case, which is that the defendant fondled Maricela Alvarez's vagina. Of those ten counts, there is only one count dealing with Maricela Alvarez. Ma'am? Yes, sir. This is a public record. I'd appreciate it if you didn't mention names. I apologize, Your Honor. You are correct, and I should not have done that. But it was clear to the parties that they knew what count it was very specifically, not just count six and we don't really know what count six is. We do know what count six is. We know the number. We know the charge. We know the victim. And defense counsel stipulated that there would be testimony to that effect. The defendant was present. He was given time to consult with his attorney. There was an agreement that the state would drop all the remaining charges, and there was an agreement to a sentence. So everything was understood and agreed to on the record, except there's sort of a mutual mistake effect in the sense that all parties, including the court, believe that the charge was still pending and it was not. That's absolutely true. That's absolutely true. That's exactly what happened. This Court's decision in Adamson and Cosner, a divorce case, is, I think, also instructive because one of the things that defense counsel argues, both here and in this reply brief, is that you've got to have a charge. The only way you can convict somebody is through a charge. Well, that's it. That's true, he says, in indictment or in information. Well, there's a virtually identical civil rule that says the only way you can commence a civil action is through filing a complaint. When the case is over, it's over. That's what happened with Mr. Adamson and Ms. Cosner. They filed a complaint. They got a divorce seven years later. And this is not a case where there's retained jurisdiction because of children or anything like that. Seven years later, divorce is over. They were dealing with, I believe it was Mr. Cosner was supposed to get a new mortgage on the house and take care of that. What about the defendant's sixth amendment right to be indicted to an indictment that doesn't apply to your divorce scenario? No, sir. But it does apply to the, as this count court has noted, he was charged. He was probable cause was found. When he pled guilty, he pled guilty to a charge that he knew of and knew the specifics of and knew the effects of. And there was no surprise. Everybody knew what they were dealing with. If there are no other questions, I'll move on to issue two. First of all, I'd like to point out a factual problem in this case. And that is defendant's claim that he didn't know that he could be committed as a sexually violent person. In 2007, at the first motion to withdraw the guilty plea, the defendant said we had a discussion about an SBP as far as that goes. I was bringing it up with him and we discussed it. So he did know that of the possibility of an SBP. Three years later, they're back in court because there's no 604D. And so they're back there and, of course, the whole issue on this thing, the whole issue of this motion to withdraw the guilty plea, the first issue never came up at that time. The whole issue when they were arguing the motion to withdraw the guilty plea was that I didn't know that I could be committed as a sexually violent person. Three years later, this whole issue has been hanging out there for three years. You cannot possibly say he didn't know what a sexually violent person's petition was and what its effect on him is. And yet again, at pages 1966 through 67, the defendant again testifies that he did have a discussion with his attorney about the Sexually Violent Persons Act. So I think that's a factual matter here that is rather critical. Now, defense counsel has argued State v. Bellamy, but State v. Bellamy is a New Jersey case. This court does not rely on out-of-state cases when there is relevant in-state cases. Well, we have that. We also have the Supreme Court's decision in Padilla that clearly sort of changes the landscape a little bit between what we traditionally believe were collateral consequences to say, and certainly in the immigration context, yes, this is a matter that should be admonished. So why shouldn't Padilla be extended to the Sexually Violent Persons Act? In Padilla, the court found that the defense counsel was deficient because he had failed to advise the defendant that he was subject to automatic, mandatory deportation. It had to happen. That's the distinctive factor about Padilla. You plead guilty to this, you are going to get deported. Now, the Illinois Sexually Violent Persons Act is neither automatic nor mandatory. First, you have the attorney general who has discretion to determine whether to even file the petition. Then you have to have several specific allegations in the petition, which has to be filed in a timely manner. Then you have to have a probable cause hearing on this sexually violent person's petition. Then you have to have a trial and prove this beyond a reasonable doubt. None of these consequences are definite, immediate, or automatic. They're not mandatory. And there is no policy, general state policy, to file one in every case. That's absolutely correct. It's different than the policy in the immigration counsel. And, in fact, defense counsel said that it's automatic, in an oral argument here today, he said it's automatic that he would be evaluated for an SVP. I don't find the support for that claim in the record. Is the new supposed to be applied retroactively to this case, or is it supposed to be applied prospectively? Your Honor, I don't have the answer to that question. Another question or factual thing that was asserted before this Court is that defendant is currently being retained on the SVP charges. Again, I don't think those facts are in the record. We really don't know the status of this defendant right now, at least not on anything based in the record. I think it's interesting. Well, I don't know that there's an answer to my question either. But what is your position relative to whether or not Padilla is retroactive or not? Well, since this is not a post-conviction type case, this is his direction. Was this case final? Did this case go to final judgment, so to speak, before or after Padilla? It's going to be very close, and I don't have the exact dates of the judgment. Padilla was decided last year, 2010. So it was pending?  Yes, it was. Well, this case might have been pending, but the question is, was the plea agreement entered into and became final for purposes of a direct appeal before or after Padilla? I think it was probably before. I would agree. I would agree. I thought defense counsel used a very interesting word several times when he was discussing the effect of the Sexually Violent Persons Act on the defendant's guilty plea. He said, perhaps. Now he's perhaps going to be recommitted. He used that word perhaps at least three times. Perhaps is what makes Padilla not applicable. Padilla was dealing with an automatic, mandatory deportation. It didn't say, perhaps he would be deported. He would be deported. Now, people versus Norris and people in the detention of Lindsay are both Illinois cases, both decided before Padilla. Are you making a Paul's graph argument? I'm sorry. I didn't hear you. Paul's graph was a case involving negligence, and it basically suggested that if the consequences of the act wasn't reasonably foreseen, then there was no duty. And it seems to me like you're arguing that the consequences of his plea were not readily foreseen like they were under Padilla, where it was almost as certain as God would strike down the Hittites that it would happen. So it sounds to me like you're making a Paul's graph argument that this is not something like Padilla because this is not reasonably foreseeable as a direct consequence of the plea. Absolutely. Thank you. As I said, people versus Norris and Lindsay were both Illinois cases which discussed this. And they know that the Sexually Violent Persons Act is not a certain consequence. It's not something the court can control, and it's totally within the attorney general's control. And it's, again, the language of Padilla is automatic, mandatory. The Sexually Violent Persons Act is not automatic nor mandatory. If there are no other questions, I'll turn it around. Thank you. Mr. Miller, what do you think about Padilla being applied retroactively in this case or prospectively? This case is pending. It was pending on direct appeal, I believe. Either when Padilla was decided or after. This case was, but the question is, was the direct appeal from the plea over or not? This is the direct appeal from the plea. I guess I'm confused. I was under the impression this was a post-conviction. So you're telling me that his entire sentence has been completed and he's now to the original plea? Well, he pled guilty, and they filed a motion to vacate the plea, and that was denied, and the defendant appealed. So that's what this appeal is. What was his original sentence, then? What was the sentence on the charge to which he pled guilty? Procedurally, what happened is he was charged criminally back in 1999. They now process some counts, and they used other counts as a basis for a sexually dangerous person's petition. He was committed on that for seven years until, I believe, 2006. And then they appeared in court with a plea agreement for the defendant to plead guilty for time served. Time served? Okay. Yes. So this appeal is from 2006? Well, this appeal, originally it was up on appeal, and it got remanded for 604D. Oh. And then now it's back up again. Okay. So a couple things regarding Padilla as far as the certainty of the consequence. First of all, I don't think Padilla says that the consequence has to be a certainty. That's number one. And secondly, there is a certainty, and that is that once someone is convicted of certain sex offenses, including this one, that when the DOC has them before they release them, they have to make a determination as to whether or not that person is a sexually violent person. Now, obviously, ultimately, the attorney general files a petition, but it is a certainty that he's going to get evaluated and put at a real risk that this is going to happen. It's also a certainty from this record that he knew he would be evaluated. That is not correct, which was another point I wanted to discuss. Yeah, the defendant once or twice referred to a sexually violent person's petition, but I'd be willing to bet that most people here don't know the difference between a sexually violent person's petition and a sexually dangerous person's petition. But he testified at the hearing on the motion to withdraw that he had discussed that issue with his lawyer. Right, but his attorney testified that he did not discuss a sexually violent person's petition with the defendant. And the defendant himself testified that he never would have pled guilty if he thought that all the issues would not have been resolved. And even if they had discussed the sexually violent person's petition, there is no indication that he was told that, there is no testimony that he was told that this was going to be filed, that he had to be reevaluated, or it was even a realistic possibility that it would be filed. Counsel, I have one final question. In Padilla, one of the things that the Supreme Court cited specifically in holding the counsel should have advised him, his client, of the consequences of their prevailing professional norms as reflected in standards, and they cited the American Bar Association standard that supported the view that counsel must advise his or her client regarding the risk of deportation. Are there any prevailing norms that you can cite that are, you know, analogous to the sexually violent person's? Well, I don't have specifically an ABA. I haven't researched that specifically. But I would say that if I'm representing a defendant at trial and I'm having him plead guilty for time served, I should be informing him that when he goes back to DOC, if he pleads guilty, he's going to get reevaluated. And then once he's reevaluated, it's out of the court's hand as far as what happens there. Then it's up to the state, and they can distinguish the attorney general or the county prosecutors. But ultimately, I would think that any attorney, if anything, would be warning his client that this is a real risk. And then the defendant could decide with that knowledge whether he wants to continue with the plea and take that risk or not. Well, that may be true. And even if we agree with that, the question is, is it reversible error not to do it? Yes. It may be the prudent thing to do. I'm not sure about that. Well, if the attorney were to solve what we would advise, that may be true, but that doesn't necessarily mean it's error. Well, I would say that it would be, yeah, that it would be ineffective assistance and that there would be the prejudice because they actually did file the petition. So I'd ask that Your Honors vacate the plea. Thank you. Thank you. There will be a short recess.